[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12091

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 21, 2011
JOHN LEY
CLERK

D.C. Docket No. 6:08-cv-02165-JA-GJK

COMPETITOR LIAISON BUREAU, INC., et al.,

Plaintiffs,

LEXINGTON INSURANCE COMPANY,
WESTCHESTER FIRE INSURANCE COMPANY,

Intervenors - Appellants,

versus

CESSNA AIRCRAFT COMPANY,

Defendant-Appellee.

_____

No. 11-12092

_____

D.C. Docket No. 6:08-cv-02165-JA-GJK

COMPETITOR LIAISON BUREAU, INC.,
NASCAR, INC.,
f/u/b/o their insurers, Including the United States

Aircraft Insurance Group,

                                                        Plaintiffs - Appellants,

LEXINGTON INSURANCE COMPANY, et al.,

                                                        Intervenors - Plaintiffs,

                                    versus

CESSNA AIRCRAFT COMPANY,

                                                        Defendant - Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(December 21, 2011)

Before TJOFLAT and BARKETT, Circuit Judges, and SMOAK,* District Judge.

PER CURIAM:

This case involves an aircraft, a Cessna 310R. It was manufactured by

Cessna Aircraft Co. ("Cessna"), sold to an aircraft leasing company, and

purchased by an entity not engaged in the business of leasing or selling aircraft on

November 22, 1978. Ownership of the aircraft changed several times after that

---

*Honorable Richard Smoak, United States District Judge for the Northern District of Florida, sitting by designation.

date until Competitor Liaison Bureau, Inc. ("CLB"), a wholly owned subsidiary of NASCAR, Inc. ("NASCAR"), purchased it in 1995. The aircraft was used both for official NASCAR business and for the transportation of NASCAR officers and directors.

On July 10, 2007, the Cessna 310R "sustained an in-flight electrical fire and crashed into a neighborhood in Sanford, Florida causing death, personal injury, and property damage to persons and property on the ground." Order at 1, Competitor Liaison Bureau, Inc. v. Cessna Aircraft Co., No. 6:08-cv-2165-Orl (M.D. Fla. Apr. 8, 2011) ("April 8 Order"). The claims presented by those who suffered such losses were settled by CLB and NASCAR, through their insurers, United States Aviation Underwriters, Inc.,[1] Westchester Fire Insurance Co. and Lexington Insurance Co. (collectively "Insurers").[2] As part of this settlement, the claimants assigned their claims against Cessna to CLB, NASCAR and Insurers, and, on December 23, 2008, these assignees, as subrogees, brought this "products

---

[1] CLB and NASCAR were insured under a policy of liability insurance issued by United States Aviation Underwriters, Inc., as managers of the United States Aircraft Insurance Group.

[2] United States Aviation Underwriters provided CLB and NASCAR primary insurance coverage; Westchester and Lexington provided them excess insurance coverage. Westchester and Lexington intervened in the case as subrogee co-plaintiffs after this suit was filed.

The claims of those who suffered losses were settled by Insurers even though there had been no determination that their insureds were at fault. The two pilots aboard the aircraft were killed in the crash. The claims arising out of their deaths are not at issue in this case.

3

liability" tort action against Cessna, in an effort to recoup the sums paid to the claimants.[3]

Their complaint alleged that the aircraft "was unreasonably dangerous when it was manufactured because Cessna used PVC-insulated wire in the cockpit . . . and . . . knew or should have known that the wire was not flame resistant and would create dangerous quantities of toxic fumes and smoke when ignited." Id. at 2. The crash occurred after the wire ignited and filled the cockpit with toxic fumes and smoke. In its answer to the complaint, Cessna denied that the PCV-insulated wire was defective as alleged. As an affirmative defense, it asserted that the plaintiffs' claims were barred based on Florida's statute of repose for products liability claims, Fla. Stat. § 95.031(2)(b)–(d).

The consolidated appeals before us, which were lodged by Insurers in No. 11-12091 and CLB in No. 11-12092, are from the district court's April 8 Order granting Cessna's motion for summary judgment based on Florida's statute of repose. As the district court stated, two statutes of repose were at issue on summary judgment: the Florida statute of repose ("FSR") and a federal statute of repose, the General Aviation Revitalization Act of 1994 ("GARA"), Pub. L. No. 103-298, 108 Stat. 1552 (codified as amended at 49 U.S.C. § 40101 note).

---

[3] These plaintiffs invoked the district court's diversity jurisdiction, 28 U.S.C. § 1332.

The FSR states, in pertinent part, that:

> Under no circumstances may a claimant commence an action for products liability, including a wrongful death action or any other claim arising from personal injury or property damage caused by a product, to recover for harm allegedly caused by a product with an expected useful life of 10 years or less, if the harm was caused by exposure to or use of the product more than 12 years after delivery of the product to its first purchaser or lessee who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product. All products, except those included within subparagraph 1. or subparagraph 2., are conclusively presumed to have an expected useful life of 10 years or less.

Fla. Stat. § 95.031(2)(b). The subparagraph 1. exception pertains to "[a]ircraft used in commercial or contract carrying of passengers or freight." Id. § 95.031(2)(b)(1). For such aircraft, "no action for products liability may be brought more than 20 years after delivery of the product to its first purchaser or lessor who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product." Id. § 95.031(2)(b)(3). The subparagraph 2. exception deals with manufacturer warranties. If "the manufacturer specifically warranted, through express representation or labeling, [that the product] has an expected useful life exceeding 10 years, [the product] has an expected useful life commensurate with the time period indicated by the warranty or label." Id. § 95.031(2)(b)(2). In addition to

these exceptions, the FSR provides that regardless of whether the twenty-year or the twelve-year statute of repose applies, "[t]he [applicable] repose period . . . is tolled for any period during which the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect." Id. § 95.031(d).

GARA provides an 18-year year statute of repose. GARA § 3, 108 Stat. at 1552 (codified at 49 U.S.C. § 40101 note). In § 2, " Time limitations on civil actions against aircraft manufacturers," GARA states, in pertinent part:

> (a) In general.—Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer or the aircraft . . . if the accident occurred—
> (1) after the applicable limitation period beginning on—
>     . . . .
>         (B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft, . . . .
> (b) Exceptions.—Subsection (a) does not apply—
>     . . . .
>         (3) if the person for whose injury or death the claim is being made was not aboard the aircraft at the time of the accident, . . . .
>     . . . .
> (d) Relationship to other laws.—This section supersedes any State law to the extent that such law permits a civil action described in subsection (a) to be brought after the applicable limitation period for such civil action established by subsection (a).

6

Id. § 2.

The district court, in its April 8 Order, concluded that Florida's 12-year repose period controlled its decision. April 8 Order at 17. That is, neither of FRS's exceptions, §§ 95.031(2)(b)(1) and 95.031(2)(b)(2), its tolling provision, § 95.031(d), or GARA applied. Id. at 5–15. Plaintiffs argue on appeal that the court erred in rejecting their argument that both exceptions apply. We are not persuaded and therefore affirm the court's ruling for the reasons the court stated in its order. Plaintiffs argue, as a fall-back position, that GARA creates a "ground damage" exception, such that a claim for the death or injury of a person not aboard the aircraft is not barred by GARA's 18-year period of repose or Florida's 12-year period of repose. Instead, the on-the-ground-claimants (and thus their subrogees) are entitled to proceed with their products liability claims if these claimants can show that their claims fell within the Florida statute of limitations governing product liability claims. As Cessna points out in its answer brief, plaintiffs' GARA theory is "an argument that a statute intended (as its name implies) to 'revitalize' the domestic aircraft industry by cutting off liability after 18 years has the effect of reviving claims that would be dead under state law and imposing perpetual liability on domestic aircraft manufacturers for ground damages claims." Appellee's Br. 9. We think the simple answer to this argument is that GARA has

7

no application here.  Subsection (b) states that subsection (a) "does not apply" where "the person for whose injury or death the claim is being made was not aboard the aircraft at the time of the accident."  GARA § 2, 108 Stat. at 1552. Plaintiffs' assignors were not aboard the aircraft; they were on the ground.

AFFIRMED.